John Doe,

    Plaintiff,

v.                                                           Case No 22CV_____

State of Tennessee;

Hon. Suzanne Lockert-Mash,
In her official capacity as Chancellor of the Dickson County Chancery Court; and

Corrine Nichole Oliver.

## Complaint

### Parties

1. John Doe is an individual person residing in White House, TN 37188 and the Plaintiff in Case No 18CV471, which raises claims under Title II of the Americans with Disabilities Act.

2. The State of Tennessee is the 16th State admitted to our federal union and is a public entity for the purposes of the Americans with Disabilities Act.

3. Hon. Suzanne Lockert-Mash is a judge of the Dickson County Circuit Court and Chancellor of the Dickson County Chancery Court and when acting in an official capacity is a public entity, namely an office of the State of Tennessee.

4. Corrine Nichole Oliver is an individual residing at 4158 Hwy 96, Burns, Tennessee 37029.

### Jurisdiction and Applicable laws

5. Claim #1 is brought pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908); Tenn. Code § 1-3-121; *Recipient of Final Expunction Order In McNairy County Circuit Court Case No. 3279 v. Rausch*, ____S.W.3d____ (Tenn. 2022).

6. Claim #3 is brought pursuant to Title II of the Americans with the Disabilities Act, specifically 42 U.S.C §12203; *Tennessee v. Lane*, 541 US 509 (2004); *Ex parte Young* 209 U.S. 123 (1908); Tenn. Code. § 1-3-121; *Recipient of Final Expunction Order In McNairy County Circuit Court Case No. 3279 v. Rausch*, ____S.W.3d____, (Tenn. 2022).

7. Claims #2, 4, and 5 are brought pursuant to 28 U.S.C. §1367; Tenn. Code §1- 3-121; *Recipient of Final Expunction Order In McNairy County Circuit Court Case No. 3279 v. Rausch,* \_\_\_\_\_S.W.3d \_\_\_\_\_ (Tenn. 2022).

## Facts

8. John Doe and Corrine Nichole Oliver practiced law in Wisconsin previously, seven and three years respectively, where they practiced family law among other things. Neither are currently licensed to practice in any state, resigning their Wisconsin licensures contemporaneously with moving to Tennessee.

9. Both John Doe and Corrine Nichole Oliver have been prior employees of both Tennessee and Wisconsin State Governments. However, Corrine Nichole Oliver now works solely from home for a Florida-based corporation and Doe is unemployed.

10. John Doe was born in Wisconsin. After meeting in a third state during law school, Corrine Nichole Oliver and John Doe resided in Wisconsin for nine years.

11. The three children of Corrine Nichole Oliver and John Doe were born in Wisconsin, living there until ages 7, 5, and 1. The Doe-Oliver family lived in Tennessee for only 18 months before protracted divorce-related proceedings began between Doe and Oliver.

12. Wisconsin child custody law is consistent with the "direct threat" analysis in the Americans with Disabilities Act. *Compare with* Wis. Stat. § 767.41(4)(b) and *In re Marriage of Wolfe v. Wolfe,* 610 NW 2d 222 (Wis. Ct. App 2000) *with* 28 C.F.R. § 35.139.

13. John Doe is the lead Plaintiff in *Doe v. Tennessee,* Middle District Case #18CV471, filed in May 2018 and which is still pending.

14. Parties to the aforementioned ADA action have included or do include The State of Tennessee, The Dickson County Chancery Court, and Corrine Nichole Oliver.

15. Among other claims, the underlying suit primarily challenges, under Title II of the Americans with Disabilities Act, certain actions taken by the State of Tennessee and Dickson County in divorce and child custody related proceedings were based on disability stigma and stereotype, thus discriminatory in depriving Doe and the minor children of their fundamental liberty interests in their parent-child relationships for a period of time.

16. In April 2020, the IRS deposited $1,200 intended for John Doe in the account of Corrine Nichole Oliver. In May 2020, John Doe filed for bankruptcy. In August 2020, while Corrine Oliver was unemployed, John Doe became aware of the payment and confronted her. At which time she claimed she had returned it to the IRS. A bankruptcy contempt

motion was unsuccessful on July 20, 2021. There is nothing indicating $1200 had been credit to John Doe's IRS account at this time, Corrine Oliver has never provided proof of any payment to the IRS,

17. In June 2021, John Doe filed an action in the Sumner County Juvenile Court alleging Ms. Oliver was not properly caring for the children's medical needs. Sumner County Juvenile Court required that to file such a petition that a report be made to State of Tennessee Child Protective Services and that resulting referral number be included in the juvenile court filing.

18. Upon becoming aware of that action, Ms. Oliver filed a petition for emergency *ex parte* temporary order in the Dickson County Chancery Court. When the relief she sought was not immediately granted, Ms. Oliver filed for an order or protection against John Doe on behalf of her and the children.

19. Corrine Nichole Oliver's July 2021 order of protection petition alleged that John Doe had engaged in an argument with his second wife in front of John Doe. It further alleged that John Doe had sent Ms. Oliver a series of text messages she deemed abusive and harassing.

20. The relevant text messages are attached as Ex A. and incorporated herein.

21. At the ensuing hearing in the Dickson County Chancery Court on July 30, 2021, Judge Lockert-Mash failed to hear John Doe's filed motion to dismiss for First Amendment ground, among other reasons, and proceeded to an evidentiary hearing. The transcript captures the following:

> John Doe: Your Honor, if I may, I filed a motion to dismiss yesterday via email. I don't know if the Court has seen that based on the –
>
> Hon. Suzanne Lockert-Mash: Have a seat.
> [To Ms. Oliver:] All right. We will go forward with your petition for order of protection and that's what we will be addressing today.

22. At the hearing, the following sequence occurred:

> Q: (Ms. Oliver, *pro se*): …did you call the Department of Children's services?
>
> A: (John Doe, witness on stand/*pro se*): Objection. That's privileged.
>
> Ms. Oliver: I would argue in the context of it being a juvenile petition, he's already admitted he filed the petition. In fact, it is corollary to the filing.

> Hon. Suzanne Lockert-Mash: Well if he made a phone call alleging some type of abuse or something of that nature, then those calls are confidential. I know what's going on here.
>
> Ms. Oliver: Yes, Your Honor.
>
> Lockert-Mash: Thank you.

23. The following sequence also occurred:

    > Q: (Ms. Oliver, pro se): Isn't it true that I'm also a party to many of the lawsuits that are part of that civil litigation?
    >
    > A: (John Doe, witness on stand/pro se): There are only two other pending litigations at the moment. One is the John Doe [verse] Tennessee case, which you are no longer party to, and the other is in the circuit court here.

24. Further, despite having the entire court file in front of her, including the final order of divorce, which did not direct the parties to use our family wizard, Judge Lockert-Mash engaged in the following questioning of John Doe which could most favorably described as badgering him to agreeing there was an order regarding the parties using a co-parenting application called Our Family Wizard.

25. John Doe did correctly understand that there has been a mention of using Our Family Wizard at prior proceedings, specifically the guardian ad litem suggested as the divorce hearing was concluded that such a provision be in the order, but the resulting off-the-record conversation did not result in an oral order, simply a recommendation. There was no provision regarding Our Family Wizard in any ensuing chancery court oral or written order which limited the parties' contact solely to Our Family Wizard.

26. John Doe and Corrine Nichole Oliver began using Our Family Wizard after the divorce hearing, but before the final order was completed.

27. Pursuant to Tenn. Code § 36-6-110 and § 36-6-10(a)(3)(B)(i), the parties' divorce order includes a provision that Ms. Oliver is to provide a phone number where the children can be contacted by Father at minimum of twice per week.

28. Father had provided the children a flip-phone previously, but replaced them with smart phones in June 2021.

29. After indicating on June 30, 2021 that the children's new smart phones were not welcome at her house, the children had no other phone than Ms. Oliver's phone until *after* the July 30, 2021 hearing.

30. In deciding the issuance of the order of protection, Hon. Suzanne Lockert-Mash stated, in relevant part:

    "I've heard enough of this case. This is the most dysfunctional family I ever seen in my entire life. You people do nothing but litigate. You have so many problems, I do not know who could take care of your problems. I've never seen anything like you tow. You come in here. You have judges recused because of this, recused about – because of this. You file lawsuits. You have everything- I have never seen a more dysfunctional family in my entire life. I don't believe anyone can help the two of you. You'd probably be better off if you had an attorney sitting next to you even though you all are attorneys…"

    "…You are filing all these different lawsuits coming back. You can't get finished with one thing, that you bring up another."

31. Then after issuing the order of protection, Judge Lockert-Mash said:

    "All right, now you all go out and file your next thing."

32. Judge Lockert-Mash did not order any direct prohibitions relating to Doe's children, nor did she find the argument with Doe's second wife constituted a basis for an order of protection. However, she did find that the text messages constituted a pattern of harassment constituting stalking under state law and issued a one-year order of protection that John Doe have no contact with Ms. Oliver.

33. However, Hon. Suzanne Judge Lockert-Mash did not make any orders permitting John Doe to attend his children's activities if Ms. Oliver was present, make arrangements for co-parenting communication during the order (apparently on the false premise such an order already was incorporated in the parenting plan), nor did she clarify how John Doe was to contact his children if he could not call Ms. Oliver's phone.

34. Furthermore, a domestic abuse order of protection comes with a firearm prohibition, thus restricting Plaintiff's second amendment rights.

35. In addition, the order of protection put John Doe under threat of criminal charges and warrantless arrest with a twelve-hour minimum hold under Tenn. Code § 39-13-113(c), should Ms. Oliver making any allegation against John Doe that a violation of the order of protection has occurred.

36. In August 2021, John Doe discussed Corrine Oliver's theft with a detective of the Dickson County Sherriff's office, who declined to pursue investigation and charges against Ms. Oliver because of the existence of the order of protection.

37. The order or protection was also presented by Ms. Oliver as a basis to dismiss the juvenile court proceeding, which was ultimately dismissed.

38. John Doe has been unemployed since April 2021 and has had concerns as to the impact or potential impact of the order of protection on his employment.

## Claims

### Claim #1 – Retaliation for exercise of rights protected under the First Amendment of the Constitution, 42 USC § 1983, declaratory and injunctive relief, as to all parties.

39. Plaintiff re-alleges ¶ 1-5, 8-38, and further incorporates ¶ 76.

40. First Amendment retaliation occurs when a person is engaged in a constitutionally protected activity, the State's conduct discouraged that activity, and the exercise of those constitutionally protected rights were a "motivating factor," behind the State's conduct." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998)); *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982).

41. In the absence of a threat of harm, John Doe's speech was generally protected under the First Amendment. *Virginia v. Black,* 538 US 343, 358 (2003).

42. Wherefore Plaintiff seeks declaratory relief that:

    In issuing an order of protection on July 30, 2021, Hon. Suzanne Lockert-Mash, in her official judicial capacity, exceeded the lawful authority of the State, specifically for issuing an order of protection for speech protected under the First Amendment of the U.S. Constitution. Therefore, the ensuing order of protection was void as a matter of law and retaliated against Plaintiff for First Amendment protected speech.

43. Wherefore, Plaintiff seeks injunctive relief barring the State of Tennessee and Corrine Nichole Oliver, together with their agents, from enforcing or extending the July 30, 2021 order of protection, or using the issuance of such order of protection as a basis for any future detriment to Plaintiff.

44. Due to Tennessee's repeated failure to abide by federal law and the potential for future retaliation, the Plaintiff seeks a declaratory judgement that Tennessee is an inconvenient forum for the Doe-Oliver child custody litigation and that Wisconsin presents a more appropriate forum, under Tenn. Code § 36-6-222 (the Uniform Child Custody Jurisdiction and Enforcement Act).

45. Furthermore, John Doe seeks injunctive relief barring the State of Tennessee from exercising child custody jurisdiction over the Doe children, except for emergencies or for proceedings necessary to effectuate this injunction.

46. Furthermore, due to Ms. Oliver repeated successful attempts to persuade Tennessee Courts to violate John Doe's federally protected rights, the Plaintiff seeks injunctive relief that that Corrine Nichole Oliver be barred from objecting to John Doe seeking in state courts a change of child custody jurisdiction to Wisconsin.

47. Plaintiff seeks costs, and attorney fees, if any, pursuant to 42 U.S.C. § 1988(b).

**Claim # 2 – State Law Claim – Under Tennessee law, Plaintiff's actions did not constitute a legal basis for a finding justifying a violation of state law, namely harassment, stalking, or abuse (declaratory judgment and injunction as to all parties)**

48. Plaintiff re-alleges ¶ 1-4, 7-38, and further incorporates

49. John Doe's July 2021 text message contacts with Corrine Nichole Oliver served a legitimate purpose and are not a basis for a finding of harassment or stalking as a matter of state law, for the purposes of issuing a domestic abuse order or protection. Tenn. Code § 36-3-601(1)&(11) and § 39-17-315.

50. Wherefore Plaintiff seeks declaratory relief that:

    In issuing an order of protection on July 30, 2021, Hon. Suzanne Lockert-Mash, in her official judicial capacity, exceeded the lawful authority of the State, specifically for issuing an order of protection for communications that were for a legitimate purpose; therefore, not a statutory basis for an order of protection. Therefore, the ensuing order of protection was void as a matter of state law.

    AND OR:

    In seeking and maintaining the July 30, 2021 order of protection, Corrine Nichole Oliver presented and perpetuated a fraud as to the whether court-ordered limitations existed between John Doe and Corrine Nichole Oliver.

51. Wherefore, Plaintiff seeks injunctive relief barring the State of Tennessee and Corrine Nichole Oliver, together with their agents, from enforcing or extending the July 30, 2021 order of protection, or using the issuance of such order of protection as a basis for any future detriment or penalty to Plaintiff.

**Claim #3 - Americans with Disabilities Act Retaliation, declaratory relief, injunctive relief, and monetary damages as to all Defendants.**

52. Plaintiff re-alleges ¶ 1-4, 6, 8-38, 40-42, 49-50, and further incorporates ¶ 76.

53. The Defendants, State of Tennessee, Judge Lockert-Mash in an official capacity, and Corrine Nichole Oliver acted without any lawful authority under state law or under the First Amendment to the Constitution in the issuing of an order of protection against John Doe.

54. The law on ADA retaliation claims is clearly laid out recently by the 6th Circuit:

    "…we analyze them under the familiar *McDonnell Douglas* burden-shifting paradigm. *Shelby Cty.,* 711 F.3d at 697 (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under that paradigm, a plaintiff must first demonstrate a prima facie case of retaliation by showing that (1) [he] engaged in protected activity under the ADA…(2) the defendant knew of the protected activity, (3) the defendant took an adverse action against the plaintiff, and (4) there was a causal connection between the adverse action and the plaintiff's protected activity. *Id.* "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id.* (quoting *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000)). If the plaintiff demonstrates [a] prima facie case, the burden of production shifts to the defendant to show that it had "a legitimate, non-discriminatory basis" for the adverse action. *Id.* If it does so, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's reasons "'were not its true reasons, but were a pretext for' retaliation." *Id.* (quoting *DiCarlo v. Potter,* 358 F.3d 408, 414-15 (6th Cir. 2004)). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry."

    *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir. 2000).

55. Wherefore, John Doe seeks a declaratory judgement that: The State of Tennessee, Judge Suzanne Lockert-Mash, and Corrine Nicole Oliver, committed prohibited ADA retaliation and interference with the fundamental, constitutional, and statutory rights of John Doe in the issuance of an order or protection on July 30, 2021.The order or protection infringed on constitutionally protected fundamental liberties including First Amendment free speech, the First Amendment right to petition the government for redress, 14th Amendment due process access to the courts, and Doe's fundamental parent-child relationships.

56. Furthermore, due to Tennessee's repeated failure to abide by federal law and the potential for future retaliation, the Plaintiff seeks injunctive relief that that, under Tenn. Code (the Uniform Child Custody Act) State of Tennessee must decline further exercise of its jurisdiction over the child custody of Doe and Corrine Nichole Oliver's minor children and that Wisconsin presents a more appropriate forum, with sufficient contacts with the children.

57. Monetary Damage awards against the State are permitted, without regard to sovereign immunity, when fundamental rights are at infringed due to a violation of the Americans with Disabilities Act. 42 U.S.C § 12202; *Tennessee v. Lane,* 541 US 509 (2004).

58. Monetary Damages for ADA retaliation and interference are allowed against private individuals, regardless of the underlying ADA title. 42 U.S.C. § 12203.

59. Wherefore, Plaintiff seeks monetary damages, joint and several against all Defendants, in an amount to be determined by the jury but no more than One Million Dollars ($1,000,000.00).

60. Plaintiff seeks costs, and attorney fees, if any, pursuant to 42 U.S.C. § 12205.

61. Wherefore, Plaintiff seeks injunctive relief that:

The State of Tennessee is hereby barred from taking any further action detrimental to John Doe due to his filing of *Doe v. Tennessee*, Case No 18CV471, or this action.

62. Wherefore, Plaintiff seeks injunctive relief barring Corrine Nichole Oliver and her agents from retaliating against John Doe for filing this action or Case No. 18CV471. Corrine Oliver shall also be barred from requesting others, including courts, to engage in action detrimental to John Doe on the basis of his having filed this action or Case No 18CV471.

**Claim #4 -Malicious prosecution (state law claim as to Corrine Nichole Oliver)**

63. Plaintiff re-alleges ¶ 1, 4, 7-38, 40-42, 49-50, 53-55 and further incorporates ¶ 76.

64. Corrine Nichole Oliver fraudulently represented to the Dickson County Chancery Court that John Doe's communications were in violation of a prior court order.

65. The elements of malicious prosecution in the State of Tennessee are as follows (1) a prior suit or judicial proceeding was brought against plaintiff without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in favor of plaintiff, (The result of the prior action is conclusive of elements 1 and 3, unless procured by fraud. *Sloan v. McCracken*, 75 Tenn. 626, 627 (1881).

66. Tennessee law has not otherwise decided how a successful collateral attack affects the malicious prosecution elements.

67. Furthermore, pursuant to Tenn. Code § 29-39-104, this malicious prosecution was malicious, intentional, fraudulent, or reckless and thus merits punitive damages.

68. Wherefore, Plaintiff prays the Court for monetary actual and compensatory damages in the amount to be determined by the jury but not to exceed of $750,000 and punitive damages in an amount up to $1,500,000.00.

**Claim #5 In the alternative to Malicious prosecution, Abuse of Process (state law claim as to Corrine Nichole Oliver)**

69. Plaintiff re-alleges ¶ 1, 4, 7, 8-38 and further alleges ¶ 76.

70. Corrine Oliver filed for the order or protection for the improper purposes of attempting to thwart the juvenile court petition filed by John Doe, thwart criminal prosecution for her theft of $1,200 from John Doe, obfuscate her contempt as it related to unimpeded phone calls, and retaliate against Doe for filing an ADA claim and protected juvenile and CPS filings and reports.

71. The statutory purpose for the order or protection statute is to provide enhance protection for victims of domestic abuse.

72. Corrine Nichole Oliver did not demonstrate any fear of John Doe or take apparent action on her own, such as blocking John Doe's phone number, to enhance her own protection or stop any alleged harassment or stalking. Furthermore, as a former lawyer her actual fear of threats of legal action should be less than, not more than, any reasonable fear that would be associated with such communications.

73. Abuse of process is misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. The tort has two elements: existence of an ulterior motive 2.) an act in the use of process other than that would be proper in the regular prosecution the charge, namely some end other than those claimed in the suit. *See e.g. Priest v. Union Agency,* 125 S.W.2d 142 (Tenn. 1993).

74. Furthermore, pursuant to Tenn. Code § 29-39-104, this malicious prosecution was malicious, intentional, fraudulent, or reckless and thus merits punitive damages.

75. Wherefore, Plaintiff prays the Court for monetary actual and compensatory damages in the amount to be determined by the jury but not to exceed of $750,000 and punitive damages in an amount up to $1,500,000.00.

**Venue**

76. Venue is proper in the U.S. District Court for the Middle District of Tennessee as all acts alleged herein occurred within the district.

Respectfully Submitted,
July 29, 2022

*John Doe* (signature)
John Doe, *Pro se* Plaintiff

John Doe, *Pro Se*
c/o Current Resident
103 Cypress Ct
White House, TN 37188
(615)415-8959
johndoeplaintiff@gmail.com