UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER WIESMUELLER, | |
| Plaintiff, | Case No. 3:22-cv-00566 |
| v. | Judge William L. Campbell, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| STATE OF TENNESSEE et al., | |
| Defendants. | |

## **MEMORANDUM ORDER**

This action brought under 42 U.S.C. § 1983 arises out of pro se Plaintiff Christopher Wiesmueller's divorce and child custody proceedings in Tennessee state court. (Doc. No. 1.) Wiesmueller's complaint alleges claims under federal and state law against the State of Tennessee (State), Dickson County Chancery Court Judge Suzanne Lockert-Mash, and Wiesmueller's ex-wife Corrine Nichole Oliver. (*Id.*)

Before the Court is Wiesmueller's motion under Federal Rule of Civil Procedure 15(a)(2) and Rule 15(d) for leave to amend and supplement his complaint. (Doc. No. 51.) Wiesmueller's proposed amended and supplemental complaint removes his state law claims and all of his claims against Oliver; adds his three minor children as plaintiffs; and asserts federal disability discrimination and retaliation claims under the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973 against the State, Lockert-Mash, Tennessee Administrator of State Courts Michelle Long, and the Justices of the Tennessee Supreme Court. (Doc. No. 51-1.) The State and Lockert-Mash oppose Wiesmueller's motion for leave to amend and supplement his complaint, arguing that the proposed amended and supplemental claims are futile. (Doc. No. 52.)

Oliver has not opposed Wiesmueller's motion, and Wiesmueller has not filed an optional reply in support of his motion for leave to file a proposed amended and supplemental complaint.

For the reasons that follow, Wiesmueller's motion will be granted in part as unopposed with respect to his claims against Oliver and denied in part with respect to all other claims.

## I.      Background

### A.      Factual Background[1]

Wiesmueller and Oliver, who divorced in 2019, are the parents of three minor children. (Doc. No. 51-1.) Oliver filed a petition for an order of protection against Wiesmueller in the Dickson County Chancery Court on July 21, 2021. (*Id.*; Doc. No. 16.) She alleged, among other things, that Wiesmueller had harassed her by sending threatening text messages, and she asked the court to order Wiesmueller not to contact her or their children. (Doc. Nos. 16, 51-1.) Lockert-Mash held a hearing on Oliver's petition on July 30, 2021. (Doc. Nos. 16, 51-1.) Wiesmueller alleges that "Lockert-Mash failed to hear [his] motion to dismiss for First Amendment grounds, among other reasons, and proceeded to an evidentiary hearing." (Doc. No. 51-1, PageID# 347, ¶ 23.) Shortly after the hearing began, Wiesmueller told Lockert-Mash that he had "filed a motion to dismiss yesterday via email" and did not "know if the Court ha[d] seen that . . . [,]" but Lockert-Mash told Wiesmueller to "[h]ave a seat" and stated that the court would "go forward with [Oliver's] petition for [an] order of protection and that's what we will be addressing today." (Doc. No. 51-1, PageID# 347, ¶ 23; Doc. No. 16, PageID# 77.)

---

[1]      The facts in this section are drawn from Wiesmueller's proposed amended and supplemental complaint (Doc. No. 51-1) and from state court records of Wiesmueller's child custody proceedings that the parties have submitted in this action (Doc. Nos. 16, 24-1, 46, 52-2). *See Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018) (holding that courts may consider "public records . . . includ[ing] documents from other court proceedings" in determining whether a plaintiff has stated claims for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)).

At the conclusion of the hearing, Lockert-Mash found that Wiesmueller had stalked Oliver by sending harassing text messages and granted in part Oliver's petition, ordering Wiesmueller not to not contact Oliver for a year, to stay away from her home, and not to possess a firearm while the order of protection was in effect. (Doc. Nos. 16, 51-1.) Before issuing her ruling, Lockert-Mash said:

> I've heard enough of this case. This is the most dysfunctional family I have ever seen in my entire life. You people do nothing but litigate. You have so many problems, I do not know who could take care of your problems. I've never seen anything like you two.
>
> You come in here. You have judges recused because of this, recused about -- because of this.
>
> You file lawsuits. You have everything -- I have never seen a more dysfunctional family in my entire life. I don't believe anyone can help you two. You'd probably be better off if you had an attorney sitting next to you all even though you are attorneys.

(Doc. No. 16, PageID# 124; Doc. No. 51-1, PageID# 349, ¶ 32.) After ruling from the bench, Lockert-Mash continued: "All right. Now, you all go out and file your next thing. . . . I suggest that both of you get mental-health counseling. I have never seen a more dysfunctional family in my entire life." (Doc. No. 16, PageID# 126.)

The order of protection would have expired on July 30, 2022, but Oliver filed a motion to extend it. (Doc. Nos. 24-1, 51-1.) Dickson County Chancery Court Senior Judge William Acree held a hearing on Oliver's motion and several other motions in Wiesmueller and Oliver's ongoing custody dispute on August 4, 2022. (Doc. Nos. 24-1, 51-1.) Acree did not hear evidence during the hearing, but he granted Oliver's motion to extend the order of protection "until the final hearing on [Wiesmueller's] motion to modify the parenting plan" and modified the order of protection to allow Wiesmueller and Oliver to "communicate with each other for the purpose[s] of serving court

filings," "sending notice of the children's activities and schedule," and to allow "[b]oth parties [to] attend their children's activities and events." (Doc. No. 24-1, PageID# 163, ¶ 2.)

Dickson County Senior Judge Roy Morgan presided over a trial hearing in the custody dispute on December 7, 2022. (Doc. Nos. 46, 51-1.) At the beginning of the hearing, Oliver moved to voluntarily dismiss her motion to extend the order of protection, and Morgan granted the voluntary dismissal. (Doc. Nos. 46, 51-1.) The remaining motions and petitions addressed during the hearing included Wiesmueller's motion for modification and deviation of child support, Wiesmueller's petition for primary custody, Oliver's petition for contempt against Wiesmueller for failure to pay child support, and Oliver's petition that Wiesmueller's visitation with the children be supervised. (Doc. No. 46.) Morgan heard Wiesmueller's and Oliver's evidence regarding these motions and petitions, "made an oral ruling at the conclusion of the day's proceedings," and "also made initial child support determinations . . . ." (*Id.* at PageID# 327.) Morgan "made revised child support related findings at a Zoom hearing on December 29, 2022[.]" (*Id.*) Wiesmueller alleges that, in stating his oral ruling, Morgan said:

> The moral, physical, mental, and emotional fitness of each parent as it relates to their ability to parent.
>
> Well, on that issue, I'm not challenging anybody's morals. Nobody mentioned whether they went to church anywhere or what your choices are on certain things, so I don't know that. That's a personal, family issue. But the mental and emotional fitness, Mr. Wiesmueller, the father, was very candid. He has issues, and it's obvious it affects his employment situation. He maybe has a license to do this, but it's hard for him to do certain work because of the orders [of protection] he's been honest about. Again, I didn't question his credibility and he didn't hem-haw or mutter around, "I can't remember," or evade questions.
>
> He was very truthful, so -- but he -- this is a weakness for him because he wrestles with those issues. It's not a personal attack on the father. I believe he's a good man. His heart's with the children. It's just when you weigh these factors out, which the Court has a duty to do, and so his emotion with his anxiety and depression and – I'm not saying he doesn't have it under control, the ADHD, whatever it is. It falls -- again, mother's more favorable in that respect.

4

(Doc. No. 51-1, PageID# 354–55, ¶ 56.)

On January 25, 2023, Morgan issued a written order stating his factual findings, dismissing Oliver's order of protection against Wiesmueller, denying Oliver's motion for supervision of Wiesmueller's visits with the children, denying Wiesmueller's petition for primary custody, denying Wiesmueller's motion for modification of child support, and dismissing Oliver's petition for contempt. (Doc. Nos. 46, 51-1.) In support of his decision to deny Wiesmueller primary custody, Morgan wrote:

> Father has failed to prove by a preponderance of the evidence a material change in circumstances since the filing of the Prior Permanent Parenting Plan. No material change of circumstances has occurred warranting a change of custody and placement.
>
> The Court further finds that even if grounds existed for a change of placement, the best interest analysis, would also not favor a change of placement, given the children's need for stability and consistency and their connection and successes in their current community. The Court notes that the children expressed their academic and extracurricular performance in Mother's school district, which carries significant weight with the Court. The Court also notes that Father lives a considerable distance, approximately an hour drive, from Mother and that a change of primary custody to Father would result is a significant disruption to the children's lives.
>
> As to the other potential custody factors, the Court notes, but does not give considerable weight to the following factors: Mother had, under the Court's prior orders, been providing for the day-to-day care of the children for some time. The Court notes Father's mental health situation. The Court also notes that only one of the children was over the age of 12 and that the children's stated preferences do not carry the day in these circumstances.

(Doc. No. 46, PageID# 328–29.)

Wiesmueller filed a notice of appeal regarding Morgan's written order. (Doc. No. 52-1.) He also filed a motion asking Morgan to make additional findings of fact and to amend the judgment. (Doc. No. 52-2.) Morgan held a Zoom hearing regarding Wiesmueller's post-judgment motion on March 17, 2023 (Doc. Nos. 51-1, 52-2), and issued a written order denying the motion

on the same day (Doc. No. 52-2). Wiesmueller alleges that, during the Zoom hearing, Morgan stated:

> I want to emphasize too just to kind of sum it up. I heard all of the evidence, again, much of which Mr. Wiesmueller cited in his motion to the transcript, but I've heard all this evidence offered by the parties.
>
> I had the opportunity as a judge, which is my job, to observe the witnesses as they testified, consider the contents of depositions. And I could observe the demeanor of the witnesses, the attitude of the witnesses, concerns or not concerns. That's just my job, and I had that opportunity. Mr. Wiesmueller, again, it's in the record. I commended him for it, but he was honest about his mental-health issues. One, two, three, he listed them. He's open about that. I commended him for that on the record. But that's just an example of the many things a judge has to do in weighing the testimony in trying to make an ultimate decision that affects these three minor children, these three young men.
>
> So that's -- that was all done, and I emphasized for the purposes of -- said to Mr. Wiesmueller for the purposes of the appeal that I was there. I heard. I observed. I witnessed the --the individuals, and their testimony, and their demeanor, and their attitude and, again, made no specific findings.
>
> Nothing offered through this motion by Plaintiff gives any basis for granting an amendment or reconsideration. That's all he's asking me to do is reconsider in this case. Ultimately, what's in the best interest of these three young men, these minor children, I've made my ruling.

(Doc. No. 51-1, PageID# 355, ¶ 58 (footnote omitted).)

## B. Procedural Background

This is the second lawsuit Wiesmueller has filed in this Court against state court judges and Oliver related to his divorce and child custody proceedings. Wiesmueller filed a similar action in 2018 asserting claims under 42 U.S.C. § 1983 for violation of Title II of the Americans with Disabilities Act (ADA) that this Court ultimately dismissed for lack of jurisdiction.[2] *See Doe v. Tennessee*, Case No. 3:18-cv-00471, 2022 WL 3365062 (M.D. Tenn. Aug. 15, 2022), *report and*

---

[2]    Wiesmueller's proposed amended and supplemental complaint identifies Wiesmueller as "the lead Plaintiff in *Doe v. Tennessee*, Middle District Case # 18CV4[71], filed in May 2018[.]" (Doc. No. 51-1, PageID# 346, ¶ 14.)

*recommendation adopted*, 2023 WL 2699970 (M.D. Tenn. Mar. 29, 2023); *see also* Order, *Doe v. Tennessee*, No. 3:18-cv-00471 (M.D. Tenn. Feb. 23, 2024), ECF No. 164 (denying plaintiff's motion for relief under Federal Rules of Civil Procedure 59(e) and 60(b)(1), (5), and (6)).

Wiesmueller initiated this action on July 29, 2022, by filing a complaint under 42 U.S.C. § 1983 against the State, Lockert-Mash, and Oliver. (Doc. No. 1.) Wiesmueller's five-count complaint alleged that all three defendants retaliated against him in violation of the First Amendment (Count 1); that Lockert-Mash violated state law by issuing the order of protection (Count 2); that all three defendants retaliated against him in violation of the ADA (Count 3); that Oliver maliciously prosecuted him in violation of state law (Count 4); and, in the alternative, that Oliver engaged in abuse of process in violation of state law (Count 5). (*Id.*) The Court referred this action to the Magistrate Judge for case management and to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 6.)

The State and Lockert-Mash moved to dismiss Wiesmueller's claims against them under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (Doc. No. 23.) Oliver, proceeding pro se, moved to dismiss Wiesmueller's claims against her under Rules 12(b)(2) and 12(b)(4) for lack of personal jurisdiction and insufficient service of process. (Doc. No. 33.)

After the parties fully briefed both motions to dismiss, the Court issued an order finding "that the claims raised [in this action] are substantially the same as those in the 2018 case" and ordered Wiesmueller to show cause "why his claims should not be dismissed for lack of jurisdiction, as in the previous case." (Doc. No. 48, PageID# 339.) The Court also denied the defendants' motions to dismiss "without prejudice to refiling" after Wiesmueller complied with the Court's order to show cause. (*Id.*) Wiesmueller filed a response to the Court's show-cause

7

order, arguing that the jurisdictional findings in the 2018 case do not bar his claims in this action.[3] (Doc. No. 50.) He also "note[d] [that] some claims in this action are now moot and new claims need to be supplemented[.]" (*Id.* at PageID# 341.)

Wiesmueller then filed a motion for leave to amend and supplement his complaint under Rules 15(a)(2) and 15(d), asking the Court "for leave to [a]mend the original complaint to remove[ ] all prior claims, except what was Claim #3 and renumber it as Claim #1, due to either mootness or resolution with Defendant, Corrine Oliver." (Doc. No. 51.) The proposed amended and supplemental complaint that Wiesmueller attached to his motion removes Oliver as a defendant; adds Wiesmueller's three minor children as plaintiffs; adds Morgan, Tennessee Administrator of State Courts Michelle Long, and the Justices of the Tennessee Supreme Court as defendants; and asserts six claims for relief. (Doc. No. 51-1.) In Count 1, Wiesmueller reasserts his ADA retaliation claim against the State and Lockert-Mash, alleging that Lockert-Mash retaliated against Wiesmueller for filing the 2018 action by granting the protective order against him. (*Id.*) Wiesmueller seeks monetary damages, a declaration that the "order of protection should not have been issued and was void *ab initio* as a matter of law[,]" and injunctions barring the State and its judicial officers "from enforcing, in any manner, the order of protection" and "from taking any further action detrimental to [ ] Wiesmueller due to his filing of *Doe v. Tennessee*, Case No 18CV[471], or this action." (*Id.* at PageID# 358, ¶¶ 66, 68, 69.) In Counts 2 and 3, Wiesmueller asserts disability discrimination claims against the State and Morgan under Title II of the ADA (Count 2) and under § 504 of the Rehabilitation Act (Count 3) and seeks monetary damages.[4]

---

[3] The Court has not yet addressed the sufficiency of Wiesmueller's response regarding its jurisdiction.

[4] The proposed amended and supplemental complaint states, in the captions for Counts 2 and 3, that Wiesmueller seeks "declaratory relief, injunctive relief, and monetary damages" (Doc. No. 51-1, PageID# 359), but Wiesmueller does not request specific declaratory or injunctive relief

(Doc. No. 51-1.) Count 4 asserts associational discrimination claims under Title II on behalf of Wiesmueller's three minor children against the State and Morgan and seeks monetary damages. (*Id.*) Count 5 asserts failure-to-train claims under Title II on behalf of Wiesmueller and his three minor children against the State, Long, and the Justices of the Tennessee Supreme Court, alleging that these defendants "wholly failed in their self-stated duty to provide policies, procedures, and assistance to the state's lesser courts with ADA compliance." (*Id.* at PageID# 361, ¶ 91.) Count 5 seeks monetary damages and "injunctive relief requiring the Defendants to implement policies, procedures, and training to all judges in the Tennessee Court system as to the requirements of the Americans with Disabilities Act . . . ." (*Id.* at ¶ 94.) In Count 6, Wiesmueller asserts failure-to-train claims under the Rehabilitation Act against the State, Long, and the Justices of the Tennessee Supreme Court. (Doc. No. 51-1.) He seeks monetary damages, a declaration that "[t]he State of Tennessee, Administrator of the State Courts, and the Justices of the Tennessee Supreme Court have failed in their self-asserted administrative obligations to ensure compliance with the Rehabilitation Act of 1973" (*id.* at PageID# 362, ¶ 100), and an injunction prohibiting these defendants "from applying, invoicing, seeking, or accepting federal grant funding for the Tennessee courts, for substantial non-compliance with the Rehabilitation Act of 1973, until such time as the Defendants demonstrate sufficient mechanisms to enforce compliance with the non-discriminatory requirements thereof" (*id.* at ¶ 101).

The State and Lockert-Mash oppose Wiesmueller's motion, arguing that it is futile because Wiesmueller's proposed amended and supplemental claims would not survive a motion to dismiss.

---

related to these claims. The only specific relief requested with respect to Counts 2 and 3 is "monetary damages, joint and several against the State of Tennessee and Hon. Roy B. Morgan in an official capacity, in an amount to be determined by the jury but no more than One Million Dollars ($1,000,000.00)." (*Id.* at PageID# 359, 360, ¶¶ 76, 83.)

(Doc. No. 52.) Oliver has not opposed Wiesmueller's motion. Wiesmueller did not file an optional reply.

## II.    Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate" flows from the principle that a plaintiff "ought to be afforded an opportunity to test [their] claim on the merits" where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The same rationale underlies Rule 15(d), which provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); *see Harris v. Davidson Cnty. Sheriff*, No. 19-5041, 2019 WL 7573883, at *3 (6th Cir. Dec. 11, 2019) (holding that the "'same standard of review and rationale apply' to a motion to supplement under Rule 15(d)" and a motion to amend under Rule 15(a)(2) (quoting *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002))); *Hudson v. CoreCivic*, Case No. 3:21-cv-00319, 2023 WL 4189660, at *2 (M.D. Tenn. June 24, 2023) ("Rule 15's general direction to grant leave to amend 'freely . . . when justice so requires,' applies to motions to supplement under Rule 15(d)." (quoting Fed. R. Civ. P. 15(a)(2))).

Thus, absent "'any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman*, 371 U.S. at 182). In general, courts find that a proposed amendment or supplement is futile when it would not survive a motion to

dismiss under Rule 12(b)(6). *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Courts may also find that a proposed amendment or supplement is futile if Eleventh Amendment sovereign immunity bars the claim or if the court would otherwise lack subject-matter jurisdiction. *See, e.g., Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993) (affirming district court's denial of leave to amend on futility grounds where state defendant would be immune from proposed amended claim under the Eleventh Amendment); *Johnston v. O'Neill*, 130 F. App'x 1, 6 (6th Cir. 2005) (affirming district court's finding that plaintiff's "motion to amend his complaint to include a tort claim against the Treasury Department for malicious prosecution would be futile and was properly denied, as the district court lacked jurisdiction to hear such a claim . . ."); *Reynolds & Reynolds Co. v. Superior Integrated Sols., Inc.*, Case No. 1:12-CV-848, 2014 WL 12666752, at *3 (S.D. Ohio Feb. 7, 2014) ("[L]eave to amend should be denied on the grounds of futility when the proposed claim is barred by clear legal principles, such as lack of jurisdiction, statute of limitations, sovereign immunity, and preemption.").

The Sixth Circuit reviews a district court's denial of a motion to amend or supplement a complaint for an abuse of discretion unless the denial rests on futility grounds, in which case de novo review applies. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Harris*, 2019 WL 7573883, at *3 (citing *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 671 (6th Cir. 2003)). Nevertheless, Sixth Circuit case law "'manifests "liberality in allowing amendments to a complaint."'" *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)).

**III.    Analysis**

**A.    Wiesmueller's Proposed Amended and Supplemental Claims Against Oliver**

Wiesmueller's motion for leave to amend and supplement his complaint requests leave to "remove[ ]" his original claims against Oliver "due to either mootness or resolution" (Doc. No. 51), and his proposed amended and supplemental complaint does not name Oliver as a defendant (Doc. No. 51-1). Oliver has not opposed Wiesmueller's motion for leave to amend and supplement his complaint, and the deadline for her to do so under this Court's Local Rules has passed. *See* M.D. Tenn. R. 7.01(a)(3) (response) (providing that "any party opposing a motion must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion"). Accordingly, to the extent that Wiesmueller's motion seeks leave to amend his claims against Oliver, his motion will be granted as unopposed. *See id.* ("If a timely response is not filed, the motion shall be deemed to be unopposed[.]").

**B.    Wiesmueller's Proposed Amended and Supplemental Claims Against the State, Lockert-Mash, Long, and the Justices of the Tennessee Supreme Court**

Lockert-Mash and the State oppose Wiesmueller's motion for leave to amend and supplement his complaint, arguing that the proposed amended and supplemental claims against them, Long, and the Justices of the Tennessee Supreme Court are futile. (Doc. No. 52.) Specifically, they argue that Wiesmueller may not assert any claims on behalf of his minor children (Counts 4 and 5) while appearing pro se; that the Court would lack subject-matter jurisdiction over the amended and supplemental ADA claims (Counts 1, 2, 4, and 5) under the *Rooker-Feldman* doctrine and the Eleventh Amendment and, in the alternative, that these claims are subject to dismissal under Rule 12(b)(6) for failure to state claims on which relief can be granted; and that the proposed amended and supplemental Rehabilitation Act claims (Counts 3 and 6) also fail to

state claims on which relief can be granted for purposes of Rule 12(b)(6). (*Id.*) Wiesmueller has not responded to these arguments.

### 1. Claims on Behalf of Wiesmueller's Minor Children

Wiesmueller filed his original and proposed amended and supplemental complaints pro se—i.e., without representation by a licensed attorney admitted to practice in this Court. (Doc. Nos. 1, 51-1.) The State and Lockert-Mash are correct that courts in this circuit generally do not allow parents proceeding pro se to prosecute claims on behalf of their minor children. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[P]arents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative."). "While 28 U.S.C. § 1654 permits individual parties to 'plead and conduct their own cases personally,' without an attorney, this provision does not authorize a non-attorney to bring suit on behalf of a third person." *Norris v. Murfreesboro Leased Hous. Assocs. I, LP*, Case No. 3:18-cv-00750, 2020 WL 2112267, at *2 (M.D. Tenn. May 4, 2020) (quoting 28 U.S.C. § 1654). And, while Rule 17(c) "permits a parent to bring suit on behalf of her minor child, it does not allow a non-lawyer parent to represent her child in federal court." *Parker v. W. Carroll Sch. Dist.*, Case No. 1:20-cv-1044, 2021 WL 71962, at *4 (W.D. Tenn. Jan. 8, 2021). A "parent can only bring suit on behalf of [a] minor child through an attorney." *Adams v. Diamond*, No. 3:18-cv-00976, 2019 WL 314569, at *2 (M.D. Tenn. Jan. 24, 2019) (citing *Shepherd*, 313 F.3d at 970).

The proposed amended and supplemental complaint contains allegations that Wiesmueller is an attorney. (Doc. No. 51-1, ¶¶ 32, 53.) But Wiesmueller has not entered an appearance as his children's counsel in this action, and there is no indication that Wiesmueller has an active law license or is admitted to practice in this Court. Consequently, the State and Lockert-Mash have shown that the proposed amended and supplemental Title II claims Wiesmuller asserts on behalf of his minor children in Count 4 and Count 5 are subject to dismissal and therefore futile. In the

alternative, as explained below, the Title II claims would also be subject to dismissal for lack of subject-matter jurisdiction. (Doc. No. 52.)

## 2.    ADA Claims

Title II of the ADA addresses discrimination on the basis of disability in the provision of public services. 42 U.S.C. §§ 12131–12165. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual;" "a record of such an impairment; or" "being regarded as having such an impairment . . . ." *Id.* § 12102(1)(A)–(C). Under Title II, a "qualified individual with a disability" is:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Id.* § 12131(2). The ADA defines a public entity as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" *Id.* § 12131(1)(A)–(B). Title II's implementing regulations provide that public entities include "the legislative and judicial branches of State and local governments." 28 C.F.R. pt. 35, app. B. Although Title II does not define "services," "programs," or "activities," the Sixth Circuit has held that these terms are to be construed broadly and "encompass[ ] virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998).

Further, the Sixth Circuit has held that "Title II . . . encompass[es] a prohibition against associational discrimination[.]" *Popovich v. Cuyahoga Cnty. Ct. of Common Pleas, Domestic Rels. Div.*, 150 F. App'x 424, 426 (6th Cir. 2005); *see also MX Grp., Inc. v. City of Covington*, 293 F.3d

326, 334–35 (6th Cir. 2002). Title II's implementing regulations provide that "a public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g).

Title V of the ADA includes an anti-retaliation provision, which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Wiesmueller's proposed amended and supplemental ADA claims include Title V retaliation claims against the State and Lockert-Mash (Count 1); Title II discrimination claims against the State and Morgan (Count 2); Title II associational discrimination claims against the State and Morgan brought by Wiesmueller's three minor children (Count 4); and Title II failure-to-train claims against the State, Long, and Tennessee's Supreme Court Justices brought by Wiesmueller and his children (Count 5). (Doc. No. 51-1.) The State and Lockert-Mash argue that the *Rooker-Feldman* doctrine deprives the Court of subject-matter jurisdiction to hear Wiesmueller's requests for declaratory and injunctive relief related to his Title V retaliation claims in Count 1, that Eleventh Amendment Sovereign Immunity bars the Court from exercising jurisdiction over all the ADA claims in the proposed amended and supplemental complaint, and, in the alternative, that the proposed amended and supplemental complaint fails to state any plausible claims for relief under the ADA. (Doc. No. 52.)

### 3. Whether the Court Has Subject-Matter Jurisdiction Over the Proposed Amended and Supplemental ADA Claims

#### a. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine—drawn from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—"generally provides that lower federal courts may not engage in appellate review of state-court decisions." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018). The doctrine reflects Congress's choice to provide only the U.S. Supreme Court, and not lower federal courts, with jurisdiction to review state-court judgments. *Id.* (citing 28 U.S.C. § 1257). It is "a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 915 (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)). However, *Rooker-Feldman* "applies not only when a party attempts to expressly appeal a state court decision to a lower federal court, but also whenever the issues raised in the federal action implicate the validity of the state court proceedings." *Gentry v. Tenn. Bd. of Judicial Conduct*, No. 3:17-cv-00020, 2017 WL 6462348, at *4 (M.D. Tenn. Sept. 26, 2017) (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2007)); *see also McCormick*, 451 F.3d at 395 ("[W]hen a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law . . . , the plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action.).

To determine whether *Rooker-Feldman* applies to a particular case, courts look to "the injury alleged in the plaintiff's federal complaint." *In re Isaacs*, 895 F.3d at 912. If the source of the plaintiff's injury is the state-court decision, then *Rooker-Feldman* prevents the district court from asserting jurisdiction. *Id.* If there is another source, "'then the plaintiff asserts an independent claim'" and *Rooker-Feldman* does not apply. *Id.* (quoting *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012)). "The source of the plaintiff's injury may . . . be determined by examining the request

16

for relief." *Id.* For example, a request to vacate a state-court judgment "clearly identifies the state-court judgment as the source of [the plaintiff's] injury" and is therefore barred by *Rooker-Feldman*. *Id.* at 912–13.

Here, the State and Lockert-Mash argue that the *Rooker-Feldman* doctrine bars Wiesmueller's Title V retaliation claims against them seeking declaratory and injunctive relief from the order of protection. (Doc. No. 52.) In Count 1 of his proposed amended and supplemental complaint, Wiesmueller alleges that, "[i]n issuing an order o[f] protection against [him] on July 30, 2021, . . . Lockert-Mash gave improper consideration to [his] filing of litigation . . . [that] alleged violations of Title II of the Americans with Disabilities Act." (Doc. No. 51-1, PageID# 357, ¶ 66.) Wiesmueller asks the Court to declare that "the ensuing order of protection should not have been issued and was void *ab initio* as a matter of law." (*Id.* at PageID# 358, ¶ 66.) He also seeks injunctions barring the State and Lockert-Mash "from enforcing, in any manner, the order of protection issued on July 30, 2021 and extended August 2, 2022, against [him]" and barring them "from taking any further action detrimental to [him] due to his filing of *Doe v. Tennessee*, Case No 18CV[471], or this action." (*Id.* at PageID# 358, ¶¶ 68, 69.) Because this requested relief clearly identifies the state-court order of protection as the source of his injuries, Wiesmueller's claims for declaratory judgment and injunctive relief are barred by *Rooker-Feldman*. *See In re Isaacs*, 895 F.3d at 912–13; *cf. Irvin v. Clarksville Montgomery Cnty.*, No. 3:19-cv-00156, 2019 WL 1014936, at *3 (M.D. Tenn. Mar. 1, 2019) ([B]ecause Plaintiff's claims for relief against Judge Smith and the Clarksville City Court depend solely upon his assertion that the state court judgment revoking his driver's license was itself unconstitutional or in violation of federal law, it falls within the purview of *Rooker-Feldman*." (citing *McCormick*, 451 F.3d at 395).) Although Wiesmueller also seeks monetary relief related to the alleged

17

retaliation (Doc. No. 51-1), his claim for damages is "'inextricably intertwined with the state court decision[ ]'" because this Court would have to review the validity of the protective order to award damages. *Lawrence v. Welch*, 531 F.3d 364, 371 (6th Cir. 2008) (quoting *Loriz v. Connaughton*, 233 F. App'x 469, 475 (6th Cir. 2007)). The *Rooker-Feldman* doctrine would therefore deprive this Court of jurisdiction to hear Wiesmueller's proposed amended and supplemental Title V retaliation claims, and the claims are futile for purposes of Rule 15(a)(2) and Rule 15(c).

### b.       Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a state by citizens of another state, the Supreme Court has extended it to suits by citizens against their own states." *Babcock v. Michigan*, 812 F.3d 531, 533 (6th Cir. 2016) (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). Eleventh Amendment "immunity applies only to lawsuits against the State or 'an arm of the State,' not to those against political subdivisions like counties." *Laborers' International Union, Local 860 v. Neff*, 29 F.4th 325, 330 (6th Cir. 2022) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). This Court found, in adjudicating Wiesmueller's Title II ADA claims in the 2018 action, that the Dickson County Chancery Court is an arm of the state for Eleventh Amendment purposes. *Doe v. Tennessee*, 2022 WL 3365062, at *4–*7.

The Court further found that "the Supreme Court has held that Congress may abrogate states' Eleventh Amendment immunity under certain circumstances and that it has done so with

respect to some Title II ADA claims."[5] *Id.* at \*4 (first citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004); and then citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)). The Supreme Court held in *United States v. Georgia* that "Title II validly abrogates state sovereign immunity" only "insofar as Title II creates a private cause of action for damages against the State for conduct that *actually* violates the Fourteenth Amendment[.]" 546 U.S. at 159. To aid lower courts in determining "what, if any, actual Fourteenth Amendment violations the plaintiff ha[s] alleged[,]" "the Supreme Court articulated a three-part test . . . ." *Doe v. Tennessee*, 2022 WL 3365062, at \*12. Under the test, courts must "determine . . . , on a claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159.

"At step one of the *Georgia* analysis, the Court must 'determine which aspects, if any, of defendants' alleged conduct violated Title II.'"[6] *Doe v. Tennessee*, 2022 WL 3365062, at \*14

---

[5]  Wiesmueller's 2018 action did not allege Title V retaliation claims, and the Court did not address abrogation of sovereign immunity for such claims in resolving that action. "Neither [the Sixth Circuit] nor the Supreme Court has decided whether Title V of the ADA abrogates state sovereign immunity." *Cook v. Garner*, No. 19-5931, 2020 WL 4876309, at \*3 (6th Cir. June 17, 2020). The State and Lockert-Mash argue that "[a]ll" of the proposed amended and supplemental ADA claims are barred by Eleventh Amendment sovereign immunity (Doc. No. 52, PageID# 375), but they have not presented any legal authority addressing abrogation of sovereign immunity under Title V. Instead, they rely on authority addressing abrogation of sovereign immunity under Title II. Because Wiesmueller's Title V claims are barred by the *Rooker-Feldman* doctrine, the Court need not address this question here.

[6]  The State and Lockert-Mash argue that Wiesmueller has not satisfied the first step of the *Georgia* test—whether the alleged state conduct violates Title II—with respect to any of the proposed amended and supplemental claims because he has not established a prima facie case of discrimination or retaliation. (Doc. No. 52.) But the Supreme Court has held that "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement" and "it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 512 (2002); *see also Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at

(quoting *Babcock*, 812 F.3d at 535). The proposed amended and supplemental complaint alleges that "Wiesmueller filed a motion to change [primary] custody of the minor children to him," "due to [Oliver] lying to the court, making false claims of abuse, lying to [their child's] doctor resulting in his medications being ceased, and violations of the current custody order." (Doc. No. 51-1, PageID# 350–51, ¶ 43.) Wiesmueller alleges that, "[a]t the December 7, 2022 Chancery Court hearing," he presented evidence that "Oliver had violated the existing child custody order" by:

- Not making the children available for calls, on at least two occasions, as demonstrated in the July 2021 text messages.

- Screening the children's mail, namely a package sent on July 31, 2021, which did [ ] include a phone for them to call Mr. Wiesmueller. This package was returned to Mr. Wiesmueller unopened a[nd] admitted into evidence at trial.

- Withholding the children from Father during the start of his Fall Break 2021 visitation, supposedly because the oldest child had COVID-19, needed to be quarantined, and the children could not be transported. Yet that same weekend, Ms. Oliver drove the children around in her car in Dickson County to run errands and attend her sister's birthday.

- After dictating that the Christmas transfer would occur at noon on Christmas Day 2021 (a time which has no basis in the family court order), Ms. Oliver decided to take the children to visit her family resulting in the transfer not happening until about 2:00pm.

(*Id.* at PageID# 351, ¶ 44.) Wiesmueller also alleges that, during the December 7, 2022 hearing and March 17, 2023 hearing, he offered evidence of Oliver's "wrongful acts, which are likely criminal," including:

---

*1 (6th Cir. Oct. 3, 2019) ("A claimant need not . . . allege facts establishing a prima facie case of disability discrimination to survive a motion to dismiss under Rule 12(b)(6)."). The Court thus applies "the ordinary rules for assessing the sufficiency of a complaint" under Federal Rule of Civil Procedure 8, *Swierkiewicz*, 534 U.S. at 511, and determines whether the factual allegations underlying the proposed amended and supplemental ADA claims are "sufficient to give notice to the defendant[s] as to what claims are alleged" and contain "'sufficient factual matter' to render the legal claim[s] plausible, i.e., more than merely possible" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A. Felony Theft for concealing and misappropriating Wiesmueller's $1,200 IRS stimulus payment, a crime aggravated by the fact Ms. Oliver was seeking to have Wiesmueller jailed for contempt for failure to pay certain sums and filed for bankruptcy during that time, as well.

B. Filing a false police report on July 18, 2021 indicating that Mr. Wiesmueller was sending text messages he was legally not supposed to do under the then-existing order.

C. Presenting false evidence by attaching the false police report to the petition for order of protection on July 21, 2021.

D. Aggravated perjury for falsely testifying on December 7, 2022 that her monthly income was the same in 2022 as it was in 2021, when it was, in fact, $1000/more, a fact minimized by Judge Morgan on March 17, 2023.

E. Aggravated perjury for falsely testifying on December 7, 2022 that she had gotten the children treatment from Dr. Jay Woodman and would continue to do so, when her own attorney later represented on March 17, 2023 to the Court that they shut Dr. Woodman down before he ever issued a report: no report, no treatment.

(*Id.* at ¶ 45.A–E.)

Wiesmueller alleges that, in an oral ruling that Morgan made at the end of the day on December 7, 2022, Morgan "did not assign . . . any bad faith" to Oliver, even though he found that she "'was a very evasive witness.'" (*Id.* at PageID# 352, 353, ¶¶ 48, 49.) Morgan allegedly said that he considered "[t]he moral, physical, mental, and emotional fitness of each parent as it relates to their ability to parent." (*Id.* at PageID# 354, ¶ 56.) Wiesmueller further alleges that Morgan remarked that he was "'not challenging anybody's morals'" but that, with respect to "'mental and emotional fitness,'" Wiesmueller "'was very candid'" and that Wiesmueller "'has issues'" that "'affect[ ] his employment situation.'" (*Id.*) Morgan further stated:

[T]his is a weakness for [Wiesmueller] because he wrestles with those issues. It's not a personal attack on the father. I believe he's a good man. His heart's with the children. It's just when you weigh these factors out, which the Court has a duty to do, . . . his emotion with his anxiety and depression and – I'm not saying he doesn't have it under control, the ADHD, whatever it is. . . . [M]other's more favorable in that respect.

(*Id.* at PageID# 355, ¶ 56.)

Morgan's January 25, 2023 written order states, among other factual findings, that Wiesmueller's "testimony here was credible and honestly disclosed matters to his own detriment, such as his employment, financial, and mental health circumstances." (Doc. No. 46, PageID# 328.) Morgan's written order denied Wiesmueller's motion for a custody change, finding that Wiesmueller "ha[d] failed to prove by a preponderance of the evidence a material change in circumstances since the filing of the Prior Permanent Parenting Plan" and that "[n]o material change of circumstances ha[d] occurred warranting a change of custody and placement." (*Id.*) Morgan further found "that even if grounds existed for a change of placement, the best interest [of the child] analysis[ ] would also not favor a change of placement, given the children's need for stability and consistency and their connection and successes in their current community." (*Id.*) Morgan stated that he gave "significant weight" to the children's testimony about "their academic and extracurricular performance in [Oliver's] school district" and "note[d] that [Wiesmueller] lives a considerable distance, approximately an hour drive, from [Oliver] and that a change of primary custody to [Wiesmueller] would result i[n] a significant disruption to the children's lives." (*Id.* at PageID# 328–29.) Morgan stated that he "note[d], but d[id] not give considerable weight to" "other potential custody factors," including Wiesmueller's "mental health situation[,]" the fact that Oliver had "been providing for the day-to-day care of the children for some time[,]" and "the children's stated preferences . . . ." (*Id.* at PageID# 329.)

Wiesmueller moved for post-judgment relief, asking Morgan to make additional findings of fact and to amend the judgment, and Morgan held a Zoom hearing regarding the motion on March 17, 2023. (Doc. Nos. 51-1, 52-2.) Wiesmueller alleges that, during the hearing, Morgan once again mentioned Wiesmueller's mental health, stating:

22

> I commended [Wiesmueller] for it, but he was honest about his mental-health issues. One, two, three, he listed them. He's open about that. I commended him for that on the record. But that's just an example of the many things a judge has to do in weighing the testimony in trying to make an ultimate decision that affects these three minor children, these three young men.

(Doc. No. 51-1, PageID# 355, ¶ 58.) Morgan issued a written order on the same day denying Wiesmueller's motions for post-trial relief, finding that Wiesmueller failed "to set forth any additional facts that ha[d] not already been considered by the Court during the trial on this matter" and, instead, that Wiesmueller was "merely requesting the Court to reconsider its past ruling." (Doc. No. 52-2, PageID# 395, 396, ¶¶ 3, 4.)

In the proposed amended and supplemental complaint, Wiesmueller alleges that Long and "the Justices of the Tennessee Supreme Court have obviously wholly failed in their self-stated duty to provide policies, procedures, and assistance to the state's lesser courts with ADA compliance" because "no less than five lesser state court jurists (Monsue, Wolfe, Wallace, Lockert-Mash, and Morgan) have discriminated against him and his children due to his disability in the last 5 ½ years." (Doc. No. 51-1, PageID# 361, ¶ 91.)

The State and Lockert-Mash do not contest that Wiesmueller is disabled within the meaning of the ADA because of his depression, anxiety, and ADHD, or that he has sufficiently alleged a disability for purposes of his Title II claims. Instead, they argue that Wiesmueller has not sufficiently alleged that he made the required showing to justify a change in custody and placement under state law or that Morgan improperly considered his mental health in determining whether a change in custody and placement was in the children's best interest. (Doc. No. 52.) Wiesmueller has not responded to these arguments.

Construing the proposed amended and supplemental complaint's allegations in the light most favorable to Wiesmueller, the Court finds that Wiesmueller has not plausibly alleged that Morgan discriminated against him or his children on the basis of disability. "[T]he ADA does not

impose a blanket prohibition on considering a parent's disability in making child custody determinations." *Doe v. Tennessee*, 2022 WL 3365062, at *18; *see also Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 553 (E.D.N.Y. 2013) ("Consideration of [parent's] disability, standing alone, is not a violation of the ADA."), *aff'd*, 560 F. App'x 6 (2d Cir. 2014). Instead, Title II protects individuals with disabilities from being "'treated on the basis of generalizations or stereotypes[ ]'" and "requires that courts determining whether a parent's disability is relevant to the child's health and safety make individualized assessments based on objective facts regarding the nature, duration, and severity of the risk, the probability that a child will actually be injured, and whether any reasonable modifications can mitigate the risk." *Doe v. Tennessee*, 2022 WL 3365062, at *15 (citation omitted).

Wiesmueller has not plausibly alleged that Morgan's actions—denying Wiesmueller's motion for a change in custody and motion for post-judgment relief—were based on generalizations or stereotypes about Wiesmueller's disability or otherwise violated Title II. Wiesmueller alleges that "Morgan made it abundantly clear that his primary consideration was [Wiesmueller's] mental health diagnosis" because Morgan repeatedly mentioned Wiesmueller's testimony "about his mental-health issues." (Doc. No. 51-1, PageID# 355, ¶ 58.) But Wiesmueller has not pleaded "'sufficient factual matter' to render" his Title II disability and associational discrimination claims against Morgan "plausible" as opposed to "merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The oral statements that Wiesmueller alleges Morgan made during hearings do not support a reasonable inference that Morgan's actions were based on generalizations or stereotypes about Wiesmueller's disability. During the December 7, 2022 hearing, Morgan stated that Oliver was

24

"'more favorable'" than Wiesmueller in terms of "'mental and emotional fitness'" based on Wiesmueller's "'candid'" and "'truthful'" testimony about "'his anxiety and depression and . . . ADHD[.]'"[7] (Doc. No. 51-1, PageID# 354–55.) And, during the March 17, 2023 hearing, Morgan stated that he considered Wiesmueller's "'honest [testimony] about his mental-health issues" as "an example of the many things a judge has to do in weighing the testimony [and] trying to make an ultimate decision that affects these three minor children, these three young men.'" (*Id.* at PageID# 355, ¶ 58.) Construed in the light most favorable to Wiesmueller, these allegations demonstrate that Morgan based his decision on Wiesmueller's specific testimony about the effects of his disability, not on generalizations or stereotypes.[8]

---

[7]     Wiesmueller alleges that Morgan also stated:

> [Wiesmueller] has issues, and it's obvious it affects his employment situation. He maybe has a license to do this, but it's hard for him to do certain work because of the orders [of protection] he's been honest about. . . . I believe he's a good man. His heart's with the children. It's just when you weigh these factors out, which the Court has a duty to do, and so his emotion with his anxiety and depression and – I'm not saying he doesn't have it under control, the ADHD, whatever it is. It falls – again, mother's more favorable in that respect.

> (Doc. No. 51-1, PageID# 354–55, ¶ 56.)

[8]     Morgan's written order, which Wiesmueller submitted in this action and referenced in his proposed amended and supplemental complaint, further demonstrates that Morgan based his actions on individualized considerations. (Doc. No. 46.) Morgan found that Wiesmueller "failed to prove by a preponderance of the evidence a material change in circumstances" necessary to support his request for a change in custody making him "the primary residential parent" and that, "even if grounds existed for a change of placement, the best interest [of the children] analysis[ ] would also not favor a change of placement, given the children's need for stability and consistency and their connection and successes in their current community." (*Id.* at PageID# 328.) Specifically, Morgan assigned "significant weight" to the children's "academic and extracurricular performance in [Oliver's] school district" and "note[d] that [Wiesmueller] lives a considerable distance, approximately an hour drive, from [Oliver]" such "that a change of primary custody to [Wiesmueller] would result in a significant disruption to the children's lives." (*Id.* at PageID# 328–29.)

Because Wiesmueller has not plausibly alleged that Morgan discriminated against him or denied him the benefits of the service, programs, or activities of the Dickson County Chancery Court by reason of Wiesmueller's disability in violation of Title II, Count 2 and Count 4 of the proposed amended and supplemental complaint do not satisfy step one of the *Georgia* analysis.

Wiesmueller alleges in Count 5 that the State, Long, and the Justices of the Tennessee Supreme Court violated Title II by failing "to provide policies, procedures, and assistance to the state's lesser courts with ADA compliance." (Doc. No. 51-1, PageID# 361, ¶ 91.) The State and Lockert-Mash argue that these claims fail at step one of the *Georgia* analysis because "'failure to train' claims are not cognizable under Title II of the ADA" (Doc. No. 52, PageID# 388). The Sixth Circuit requires a plaintiff asserting claims under Title II to "'show that the discrimination was *intentionally* directed toward him or her in particular.'" *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (quoting *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008)). "[A]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular." *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (alterations in original) (quoting *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997)), *abrogated in part on other grounds*, *Anderson*, 798 F.3d at 357 n.1. "Therefore, claims under Title II of the ADA cannot be based on theories of recovery such as failure to train or failure to supervise, since these failures are necessarily not directed at a particular disabled individual." *Bowie v. Hamilton Cnty. Juv. Ct.*, Case No. 1:18-cv-395, 2019 WL 1305864, at *3 (S.D. Ohio Mar. 22, 2019); *see also Dillery*, 398 F.3d at 568 (holding that plaintiff could not "demonstrate that [defendant city] intentionally discriminated against her specifically by failing to" "train its employees about the ADA" because city's failure "affect[ed] all disabled persons, not just [plaintiff]"); *Scozzari v. City of Clare*, Case No. 08-10997, 2009 WL 10665769, at *5 (E.D.

Mich. June 11, 2009) ("[T]o the extent that Plaintiff seeks to amend the complaint to allege a claim under Title II of the ADA based on Defendant City of Clare's failure to train its officers, Plaintiff's motion will be denied because pursuing such a claim would be futile."). The proposed amended and supplemental claims in Count 5 do not satisfy step one of the *Georgia* analysis.

If a court determines that a plaintiff "failed to state an ADA claim" at step one of the *Georgia* analysis, "it need not" "and should not" consider the constitutional questions posed by steps two and three—whether the alleged conduct also violates the Fourteenth Amendment and, if the conduct violates Title II but not the Fourteenth Amendment, whether Congress's abrogation of sovereign immunity is nevertheless valid with respect to the plaintiff's claims. *Zibbell v. Mich. Dep't of Hum. Servs.*, 313 F. App'x 843, 847 (6th Cir. 2009); *see also id.* at 847–48 ("[U]nder *Georgia*, the constitutional question—abrogation of Eleventh Amendment immunity—will be reached only after finding a viable claim under Title II." (quoting *Haas v. Quest Recovery Servs., Inc.*, 247 F. App'x 670, 672 (6th Cir. 2007))). Failure to identify conduct that violates Title II at step one of the *Georgia* analysis is dispositive because, "[w]ithout identifying ADA-violating conduct," a court cannot find "that Congress abrogated the states' sovereign immunity by a valid exercise of its power under § 5 of the Fourteenth Amendment." *Babcock*, 812 F.3d at 539.

The Court therefore finds that Congress has not validly abrogated sovereign immunity with respect to Wiesmueller's and his children's Title II claims in Counts 2, 4, and 5 of the proposed amended and supplemental complaint.

Wiesmueller's proposed amended and supplemental complaint cites *Ex Parte Young*, 209 U.S. 123 (1908), as a basis for the Court's jurisdiction over his ADA claims for injunctive relief. "The *Ex Parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law." *Jones v. Tenn. Dep't of Corr.*, Case No. 3:20-cv-00340, 2021

WL 866487, at *4 (M.D. Tenn. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 859625 (M.D. Tenn. Mar. 8, 2021). However, as the State and Lockert-Mash point out, the *Ex Parte Young* exception only applies where the plaintiff "'alleges an ongoing violation of federal law . . . .'" *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)). Here, because Wiesmueller has not alleged any plausible ongoing violations of Title II, the *Ex Parte Young* exception does not apply to his proposed amended and supplemental claims.

Because sovereign immunity would bar the Court's consideration of Counts 2, 4, and 5 of the proposed amended and supplemental complaint, granting leave to amend and supplement with respect to these claims would be futile.

### 4. Rehabilitation Act Claims

Counts 3 and 6 of the proposed amended and supplemental complaint assert claims under § 504 of the Rehabilitation Act. (Doc. No. 51-1.) The ADA and the Rehabilitation Act "are quite similar in purpose and scope." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). Section 504 protects any "otherwise qualified individual with a disability" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance" "solely by reason of his or her disability[.]" 29 U.S.C. § 794(a). Wiesmueller's proposed amended and supplemental claims under § 504 parallel his proposed amended and supplemental claims under Title II. In Count 3, Wiesmueller alleges that the State and Morgan discriminated against him "solely on the basis of his disability" in violation of § 504 by denying his motion for a change in custody. (Doc. No. 51-1, PageID# 360, ¶ 82.) In Count 6, Wiesmueller alleges that the State, Long, and the Justices of the Tennessee Supreme Court failed to train lower state courts how to comply with § 504's requirements. (*Id.* at PageID# 361.)

The State and Lockert-Mash concede that the Court has subject-matter jurisdiction over Wiesmueller's proposed amended and supplemental claims under § 504. They argue, however, that these claims are nevertheless futile because Counts 3 and 6 do not state claims on which relief can be granted. (Doc. No. 52.) The State and Lockert-Mash do not challenge Wiesmueller's allegations that he is disabled or that the State and its courts receive federal financial assistance within the meaning of § 504. Instead, they argue that Count 3 fails because Wiesmueller has not plausibly alleged that he otherwise qualified for a change in custody and that Morgan discriminated against him solely on the basis of his disability and Count 6 fails because failure-to-train claims are not cognizable under § 504. (*Id.*) Wiesmueller has not responded to the State and Lockert-Mash's arguments.

For the reasons discussed above in analyzing Wiesmueller's proposed amended and supplemental Title II claims, Wiesmueller has not plausibly alleged that his disability was the sole reason Morgan denied his motion for a change in custody and that he otherwise qualified for the requested custody change under state law. Similarly, courts in this circuit have found that failure-to-train claims brought under § 504 are "without merit" because "[f]ailure to train employees about the [Rehabilitation Act] affects all disabled persons, not just the plaintiff." *Kirchner v. Tennessee*, Case No. 3:14-CV-63, 2015 WL 13672464, at *2 (E.D. Tenn. June 4, 2015); *see also Griffin v. Sanders*, Civ. Case No. 11-CV-12289, 2013 WL 3788826, at *8 (E.D. Mich. July 19, 2013) (rejecting § 504 claim based on defendants' failure to train employees). Wiesmueller therefore "cannot demonstrate that the State[,]" Long, and the Justices of the Tennessee Supreme Court "discriminated against him specifically by failing to train" lower courts on § 504 compliance. *Kirchner*, 2015 WL 13672464, at *2.

29

Counts 3 and 6 of the proposed amended and supplemental complaint are therefore subject to dismissal under Rule 12(b)(6), and granting Wiesmueller's motion for leave to amend and supplement his complaint with respect to these claims would be futile.

## IV.     Conclusion

For these reasons, Wiesmueller's motion for leave to amend and supplement his complaint (Doc. No. 51) is GRANTED IN PART AND DENIED IN PART. To the extent that Wiesmueller seeks leave to amend his original complaint to remove all claims against Oliver, his motion is GRANTED AS UNOPPOSED, and the Clerk of Court is DIRECTED to terminate Oliver as a defendant in this action. To the extent that Wiesmueller seeks leave to amend and supplement the claims against any other defendants, his motion is DENIED.

It is so ORDERED.


ALISTAIR E. NEWBERN
United States Magistrate Judge